IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONNA KNOCHEL,                                )
KENNETH R. KNOCHEL, her husband,              )
                                              )
            Plaintiffs,                       )
                                              )
      v.                                      )      Civil Action No. 06-426
                                              )
HEALTHASSURANCE PENNSYLVANIA, INC., )                Judge Lancaster
HEALTHASSURANCE,                              )      Magistrate Judge Hay
HEALTHAMERICA PENNSYLVANIA, INC.,             )
HEALTHAMERICA,                                )
HEALTHAMERICA/HEALTHASSURANCE,                )
                                              )
            Defendants.                       )

REPORT AND RECOMMENDATION

I.    RECOMMENDATION

            It is respectfully recommended that the motion to dismiss submitted on behalf of

defendants  (Docket No. 5) be granted.

II.   REPORT

            Plaintiffs, Donna Knochel and her husband, Kenneth R. Knochel, commenced this

action against defendants HealthAssurance Pennsylvania, Inc., HealthAssurance, HealthAmerica,

Pennsylvania, Inc., HealthAmerica and HealthAmerica/HealthAssurance, after defendants denied

Mrs. Knochel insurance coverage for medical treatment.

            According to the complaint, Donna Knochel has been diagnosed with ovarian

cancer, Stage IV, progressive disease, for which she has been treated with surgery and various

chemotherapy regimens since 1999.  In August of 2005, after the cancer metastasized to Mrs.

Knochel's diaphragm and lungs, she began chemotherapy utilizing Taxotere and Camptosar on

the recommendation of her treating physician.  Mrs. Knochel sought insurance coverage for the

treatment under her health care benefits policy, which was provided pursuant to a contract

entered into between her husband's employer and defendants.  Defendants subsequently denied coverage citing to an exclusionary provision in the contract which exempts from coverage services that are determined to be experimental.  Plaintiffs maintain, as they did through the various levels of appeals required under the contract, that the treatment sought is not only not experimental but is an accepted method of treatment and that by denying coverage defendants have failed to fulfill their obligations under the terms of the contract.

Plaintiffs filed a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, on February 17, 2006, bringing state law claims for breach of contract (Count I) and bad faith (Count II).  Defendants removed the case to this Court on March 31, 2006, based on federal question jurisdiction, asserting that plaintiffs are in essence seeking to recover benefits under an employee welfare plan that is controlled exclusively by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*.  Defendants have now filed a motion to dismiss arguing that plaintiffs' claims are preempted by ERISA.

Although plaintiffs have not challenged removal to this Court or sought to have the case remanded, it is nevertheless incumbent upon the Court, being of limited jurisdiction, to satisfy itself that it has subject matter jurisdiction over plaintiffs' claims.  See Sopak v. Highmark, Inc., 2002 WL 1271366 *2 (W.D. Pa. February 19, 2002), citing Meritcare v. St. Paul Mercury Insurance Co., 166 F.3d 214, 217 (3d Cir. 1999), abrogated on other grounds, Exxon Mobile Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005).  We do so here, in particular, so as to resolve a perceived misunderstanding between removal jurisdiction under ERISA and preemption.

It is well settled that a civil action filed in state court may be removed if the district court would have had "original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States."  28 U.S.C. § 1441.  See Aetna Health Inc. v.

2

Davila, 542 U.S. 200, 207 (2004) ("Davila").  Ordinarily, the "well-pleaded complaint rule,"

dictates whether a case arises under federal law and permits removal only if a federal question is

presented on the face of the plaintiff's complaint.  Id., citing Franchise Tax Bd. v. Construction

Laborers Vacation Trust, 463 U.S. 1, 9-12 (1983).  An exception to the well-pleaded complaint

rule exists, however, where,

> Congress [has] so completely preempt[ed] a particular area of the
> law that any civil complaint raising this select group of claims is
> necessarily federal in character.... [T]he preemptive force of (the
> federal statutory provision) is so powerful as to displace entirely
> any state cause of action (addressed by the federal statute). Any
> such suit is purely a creature of federal law, notwithstanding the
> fact that state law would provide a cause of action in the absence of
> the (federal provision).

Dukes v. U.S. Health Care, Inc., 57 F.3d 350, 354 (3d Cir.), cert. denied, 516 U.S. 1009 (1995)

("Dukes")(internal quotations and citations omitted).  As found by the United States Supreme

Court, ERISA, and in particular its civil enforcement provision found at § 502(a), is just such a

statute and "converts an ordinary state common law complaint into one stating a federal claim for

purposes of the well-pleaded complaint rule."[1]  Davila, 542 U.S. at 208-209, quoting

Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 65-66 (1987).  As such, a cause of action

that falls within § 502(a) is completely preempted and removable to federal court.  Id., at 209.[2]

---

[1] Section 502(a) specifically empowers a plan participant or beneficiary to bring a civil
action "to recover benefits due to him under the terms of his plan, to enforce his rights under the
terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.
§ 1132(a)(1)(B).

[2] By contrast, although ERISA's § 514(a), which is discussed further below, provides that
"the provisions of this title ... shall supersede any and all State laws insofar as they may now or
hereafter relate to any employee benefit plan ...," the express preemption created thereunder does
not create removal jurisdiction but simply provides a substantive defense to claims brought under
state law.  Unlike the scope of § 502(a), " § 514(a) merely governs the law that will apply to state
law claims, regardless of whether the case is brought in state or federal court."  Lazorko v.
Pennsylvania Hospital, 237 F.3d 242, 248 (3d Cir. 2000), cert. denied, 533 U.S. 930 (2001).
Thus, "[s]tate law claims which fall outside of the scope of § 502, even if preempted by § 514(a),

A claim "falls within" the scope of ERISA and is completely preempted, if the plaintiff "could have brought his claim under ERISA § 502(a)(1)(B), and ... there is no other independent legal duty that is implicated by a defendant's actions."  Id., 542 U.S. at 210.  See Pascack Valley Hospital v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004).  Here, as previously discussed, plaintiffs have alleged that defendants provided health coverage to Mrs. Knochel under her husband's health benefit plan and that her attending physician treated her with chemotherapy utilizing Taxotere and Camptosar, which defendants refused to pay for asserting that the treatment was not covered under the terms of the contract.  Moreover, it appears undisputed that the contract under which Mrs. Knochel is insured is an ERISA plan.  See 29 U.S.C. § 1002(1); Complaint ¶ 9.  Thus, it appears that plaintiffs are complaining about the denial of coverage which is a claim that could have brought under § 502(a) thereby satisfying the first inquiry.  See Davila, 542 U.S. at 211-12; Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 56 (1987) (Congress clearly intended that "all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a)."); Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 273 (3d Cir. 2001) ("[A] claim alleging that an HMO declined to approve certain medical services or treatment on the ground that they were not covered under the plan would manifestly be one regarding the proper administration of benefits.  Such a claim, no matter how couched, is completely preempted and removable on that basis.")

Further, it does not appear that defendants' actions in denying coverage implicate another independent legal duty.  Rather, it appears that plaintiffs' breach of contract and bad faith claims are premised on defendants' duty to make health care decisions impartially and in good

---

are still governed by the well-pleaded complaint rule and, therefore, are not removable ...."  Dukes, 57 F.3d at 355.

4

faith and renders them liable for damages caused by their having breached that duty.  See Davila, 542 U.S. at 212-13.  Indeed, as found by the United States Supreme Court in Davila, where the denial of coverage for medical treatment was also at issue,

> if a managed care entity correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered, the managed care entity's denial of coverage would not be a proximate cause of any injuries arising from the denial.  Rather, the failure of the plan itself to cover the requested treatment would be the proximate cause.
>
> *     *     *
>
> Thus, interpretation of the terms of respondents' benefit plans forms an essential part of their [state law] claim, and [state law] liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans.  Petitioners' potential liability under [state law] in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans.  So, ... respondents' [state law] causes of action are not entirely independent of the federally regulated contract itself.

Davila, 542 U.S. at 213.

Here, like in Davila, the terms of plaintiffs' benefit plan is a critical part of their breach of contract and bad faith claims and defendants' liability would exist only because of defendants administration of the ERISA plan and is dependent on what particular rights and obligations are established under the plan.  Thus, under Davila, it cannot be said that the legal duty alleged is entirely independent of ERISA.[3]  It therefore appears that plaintiffs' claims fall within the scope of ERISA and are completely preempted.  See Davila, 542 U.S. at 214.  The Court, therefore, has subject matter jurisdiction over plaintiffs' claims and the case was properly removed under § 502(a).  Id. at 207-14.  See Lazorko v. Pennsylvania Hospital, 237 F.3d at 248

---

[3]Although plaintiffs suggest that their claims are "independent of any claim for benefits," they do so in countering defendants' position that plaintiffs' claims are preempted under § 514(a) and not to challenge removal.  Moreover, they have not provided the Court with any meaningful argument to support their position.

5

(Finding that a claim for the denial of benefits under an ERISA plan comes under ERISA's civil enforcement provision thereby creating removal jurisdiction even though no federal question appears on the fact of the complaint.)

Having concluded that the Court has subject matter jurisdiction over plaintiffs' claims the Court may properly address defendants' motion to dismiss under Fed. R.Civ. P. 12(b)(6), in which they contend that plaintiffs' claims are properly dismissed as they are based entirely on state law and are *expressly* preempted by ERISA.

In reviewing a motion to dismiss under Rule 12(b)(6), all well pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. Brader v. Allegheny General Hospital, 64 F.3d 869, 873 (3d Cir. 1995); Scrob v. Patterson, 948 F.2d 1402, 1405 (3d Cir. 1991). The Court is not, however, required to accept as true unsupported conclusions and unwarranted inferences. Schuylkill Energy Resources v. PP&L, 113 F.3d 405, 417 (3d Cir. 1997). Thus, "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion to dismiss is properly granted. Haines v. Kerner, 404 U.S. 519, 520-21 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue is not whether the plaintiff will prevail in the end but only whether he should be entitled to offer evidence in support of his claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

ERISA was enacted to provide a substantive uniform regulatory regime over employee benefit plans and to provide for appropriate remedies and sanctions as well as access to the Federal courts in order to protect the interests of plan participants and their beneficiaries. Davila, 542 U.S. at 208. See 29 U.S.C. § 1001(b). To that end, Congress included a preemption provision, § 514(a), which provides that: "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan

6

described in section 1003(a) of this title ....”  29 U.S.C. § 1144(a).  See Davila, 542 U.S. at 208.

The United States Supreme Court has found that this provision, which it has described as

“conspicuous for its breadth” and “deliberately expansive,” was “intended to ensure that

employee benefit plan regulation would be ‘exclusively a federal concern.’”  Id., quoting Alessi

v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981).  Thus, any state law that “relates to” an

ERISA plan is superceded by ERISA.  Lazorko v. Pennsylvania Hospital, 237 F.3d at 248.

> “A law ‘relates to’ an employee benefit plan, in the normal
> sense of the phrase, if it has a connection with or reference to such
> a plan.” .... Under this “broad common-sense meaning,” a state law
> may “relate to” a benefit plan, and thereby be pre-empted, even if
> the law is not specifically designed to affect such plans, or the
> effect is only indirect.... Pre-emption is also not precluded simply
> because a state law is consistent with ERISA's substantive
> requirements.

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990) (citations omitted).  See 1975

Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers, 968 F.2d 401, 406

(3d Cir. 1992), cert. denied, 506 U.S. 1086 (1993) (Interpreting Ingersoll-Rand as finding that the

suit related to an ERISA plan where the existence of such a plan was critical in establishing

liability and where the court’s inquiry would be directed to the plan.)

Here, as previously discussed, it appears undisputed that the contract under which

Mrs. Knochel is insured is an ERISA plan.  See 29 U.S.C. § 1002(1); Complaint ¶ 9.  Moreover,

it appears from the complaint that the basis of plaintiffs’ claims for both breach of contract and

bad faith is that defendants improperly denied coverage of medical treatment under the plan by

invoking the experimental treatment exclusion.  See Complaint, generally.  Thus, plaintiffs’

claims not only have a connection with the plan but they clearly reference the plan and are

dependent on the plan’s interpretation.  It therefore appears that plaintiffs’ state law claims relate

to an ERISA plan and are preempted under § 514(a).  See Pilot Life Insurance Co. v. Dedeaux,

481 U.S. at 47-48 (Finding that the plaintiff’s common law causes of action based on alleged

improper processing of a claim for benefits under an employee benefit plan "relate to" an employee benefit plan and, thus, meet the criteria for preemption under § 514(a).); Kearney v. U.S. Health Care, Inc., 859 F. Supp. 182, 184-85 (E.D. Pa. 1994) ("However characterized, plaintiff's claims which arise from the manner in which defendant administered benefits or which are premised on the type or extent of benefits defendant promised or provided are preempted.")

        Plaintiffs have not argued that their claims are unrelated to an ERISA plan or otherwise addressed defendants' argument in this regard.  Rather, without citing to any authority, plaintiffs merely conclude that their state law claim are independent of any claim for benefits and, thus, are not preempted.  Whether or not a state law claim is independent of an ERISA plan, however, is an inquiry relevant to determining whether plaintiffs' claims are completely preempted under § 502(a) for purposes of removal jurisdiction, which plaintiffs have not challenged.  Moreover, the Court has already found that it has subject matter over plaintiffs' claims and that removal was proper.

        Plaintiffs have argued, however, that their claim for bad faith claim brought pursuant to 42 Pa. C.S. § 8371,[4] should not be preempted as a whole but only insofar as the punitive damages remedy provided for therein subplants ERISA's exclusive remedial scheme since a state law is only preempted to the extent that it actually conflicts with federal law.

_____

    [4] 42 Pa.C.S. § 8371 provides:
        In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
        (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
        (2) Award punitive damages against the insurer.
        (3) Assess court costs and attorney fees against the insurer.

8

Plaintiffs also argue that Pennsylvania's bad faith statute is nevertheless saved from preemption under ERISA's savings clause.

Curiously, plaintiffs rely on Barber v. UNUM Life Insurance Co., 383 F.3d 134 (3d Cir. 2004)("Barber"), for support wherein the Court of Appeals for the Third Circuit has seemingly rejected both of these arguments.  Relying on Davila, 542 U.S. at 217-18, wherein the United States Supreme Court noted that "Congress' policy choices reflected in ERISA's exclusive remedial provision would be undermined by state laws allowing alternate remedies," the Barber Court concluded that 42 Pa.C.S. § 8371 was properly preempted "because the punitive damages remedy supplements ERISA's exclusive remedial scheme." Id.  It did not hold, as plaintiffs have suggested, that preemption should be limited to the remedies provided for in § 8371 and not applied to the statute as a whole.  See Waters v. Kemper Insurance Companies, 2004 WL 2700914 *3 (W.D. Pa. April 19, 2004), quoting Kidneigh v. UNUM Life Insurance Co., 345 F.3d 1182, 1185 (10th Cir. 2003), cert. denied, 540 U.S. 1184 (2004) ("State law causes of action ... are preempted under ERISA ... when they ... provide[ ] remedies beyond those contained in ERISA itself.")

Further, although ERISA contains a "savings clause" whereby a state law will be saved from preemption if it "regulates insurance, banking, or securities," the Barber Court has specifically found that Pennsylvania's bad faith statute does not fall within that category.[5]  In reaching its conclusion, the Court applied the two part test set forth in Kentucky Association of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003) ("Miller"), which provides that a statute will be found to regulate insurance "if it (1) is 'specifically directed toward entities engaged in insurance' and (2) 'substantially affect[s] the risk pooling arrangement between the insurer and

_____

[5]ERISA's "savings clause," found in § 514(b)(2)(A), specifically provides that, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."  29 U.S.C. § 1144(b)(2)(A).

the insured.'" <u>Barber</u>, 383 F.3d at 141, <u>quoting</u> <u>Miller</u>, 538 U.S. at 341-42.  The Court found that

although 42 Pa. C.S. § 8371 is specifically directed toward entities engaged in insurance, thereby

satisfying the first prong of the test, it did not satisfy the second prong.  In so finding, the Court

opined that § 8371,

> is remedial in nature-it is a remedy to which the insured may turn
> when injured by the bad faith of an insurer.  *See Kidneigh v.*
> *UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1187 (10th Cir. 2003)
> ("[B]ad faith claims, whether common law or statutory, merely
> provide an additional remedy for policyholders.").  42 Pa.C.S. §
> 8371 does not affect the kinds of bargains insurers and insureds
> may make.  It provides that whatever the bargain struck, if the
> insurer acts in bad faith, the insured may recover punitive damages.
> *Pilot Life*, 481 U.S. at 49-51, 107 S.Ct. 1549 (holding "the
> common law of bad faith does not define the terms of the
> relationship between the insurer and the insured; it declares only
> that, whatever terms have been agreed upon in the insurance
> contract, a breach of that contract may in certain circumstances
> allow the policyholder to obtain punitive damages.")
>
> Moreover, claims for bad faith insurance breaches bear no relation
> to the risk pooled-the risk of loss the insurer agrees to bear on
> behalf of the insured. Within the insurance industry, "risk" means
> the risk of occurrence of injury or loss for which the insurer
> contractually agrees to compensate the insured. With risk pooling,
> "a number of risks are accepted, some of which involve losses,"
> and the "losses are spread over all the risks so as to enable the
> insurer to accept each risk at a slight fraction of the possible
> liability upon it." *Union Labor Life Ins. Co. v. Pireno*, 458 U.S.
> 119, 128 n. 7, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982) (internal
> quotations omitted)....

<u>Id.</u> at 144.  The Court then concluded that "[h]ere, the risk pooled, in this case the risk of

disability, is reflected in the policy itself.  The tort of bad faith breach of an insurance contract is

not ordinarily a risk identified in the insurance policy as a risk of loss the insurer agrees to bear

for its insured."  <u>Id.</u>

Similarly, in this case, plaintiffs' claim for bad faith is not a risk identified in the

insurance contract and is not a risk of loss that defendants agreed to bear on plaintiffs' behalf.  It

therefore appears that Pennsylvania's bad faith statute does not "regulate insurance" as is

required to satisfy ERISA's savings clause.  As such, plaintiffs' bad faith claim is not saved from preemption and is properly dismissed.  Id.  See Waters v. Kemper, 2004 WL 2700914 at *3 (Finding that the plaintiff's claim for bad faith brought after the defendant-insurer denied her claim for benefits was properly dismissed as "Pennsylvania's bad faith law does not 'regulate insurance' within the meaning of ERISA's savings clause.")

Plaintiffs nevertheless argue in the alternative that, under Carducci v. Aetna U.S. Healthcare, 247 F. Supp. 596, 607 (D.N.J. 2003) ("Carducci"), even if their state law claims are preempted by ERISA, the Court may "transform" them into claims brought under ERISA instead of dismissing the complaint.  Plaintiffs, however, have not only misapplied the district court's findings in Carducci, but, more importantly, Carducci has been reversed by the Court of Appeals for the Third Circuit on this very issue.  See Levine v. U.S. Healthcare Corp., 402 F.3d 156 (2005) ("Levine").

Review of Carducci demonstrates that the issue being addressed by the district court in the portion of the case cited by plaintiffs was whether the plaintiff's claims in that case were completely preempted under § 502(a).  Carducci, 247 F. Supp. 2d at 607.  As previously discussed, complete preemption is a jurisdictional concept that  "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint."  In re U.S. Healthcare, Inc., 193 F.3d 151, 160 (3d Cir. 1999), cert. denied, 530 U.S. 1242 (2000).  Thus, a state law claim that could have been brought pursuant to ERISA's civil enforcement provision, § 502(a), and subject to complete preemption is "necessarily federal in character" and, under those particular circumstances, is converted or transformed into a federal claim for purposes of permitting removal to federal court.  Id., citing Metropolitan Life Ins. Co. v. Taylor, 481 U.S. at 63.

In the instant case, however, express preemption under § 514(a) is at issue whereby state law claims that "relate to" an employee benefit plan are superceded by federal law thereby providing a substantive defense to claims brought under state law and, thus, are subject to dismissal.  In re U.S. Healthcare, Inc., 193 F.3d at 160; Waldschmidt v. Aetna U.S. Healthcare, 225 F. Supp. 2d 560, 563 (W.D. Pa. 2002).

Indeed, on appeal in the Carducci case, the Third Circuit specifically held that the district court erred in denying the insurance provider's motion to dismiss because the plaintiffs' claims brought pursuant to state law were preempted under § 514(a).  Levine, 402 F.3d at 166-67.  In fact, the Court twice stated that because the underlying claims are preempted under § 514(a) they "*must* be dismissed."  Id. at 159, 164 (emphasis added).  Having found that the instant plaintiffs' claims are also preempted under § 514(a), it follows that they too must be dismissed.

For these reasons, it is recommended that the motion to dismiss submitted on behalf of defendants  (Docket No. 5) be granted.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 25 September, 2006.

cc:     Hon. Gary L. Lancaster
        United States District Judge

12

Deborah L. Lowery, Esquire
William F. Goodrich, Esquire
Goodrich & Goodrich
429 Fourth Avenue
900 Law & Finance Building
Pittsburgh, PA 15219

Steven B. Silverman, Esquire
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA 15222